# Third District Court of Appeal

## State of Florida

Opinion filed October 31, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D18-988, 3D18-984, 3D18-839
Lower Tribunal No. 16-15359
_____

**R.D.S., the Father, and T.D.S., the Mother,**
Appellants,

vs.

**The Department of Children and Families, et al.,**
Appellees.

Appeals from the Circuit Court for Miami-Dade County, Jason E. Dimitris, Judge.

Eugene F. Zenobi, Criminal Conflict and Civil Regional Counsel, Third Region, and Kevin Coyle Colbert, Assistant Regional Counsel, for the Father; Roger Ally; Lori Black Ogene, for the Mother, for appellants.

Karla Perkins, for Dept. of Children & Families; Laura J. Lee (Tallahassee), for Guardian ad Litem Program, for appellees.

Before SALTER, EMAS and FERNANDEZ, JJ.

SALTER, J.

We review three consolidated cases, all relating to a single dependency case in the circuit court, and all commenced here by the parents of S.D.S., born in October 2007 (the "Child"). The "Final Judgment Denying Termination of Parental Rights and Order of Adjudication," entered April 16, 2018 (the "Final Judgment"), denied a petition for the termination of parental rights ("TPR") of the Mother, T.D.S., and Father, R.D.S., by the Department of Children and Families ("DCF"), joined by the Guardian Ad Litem Program ("GAL Program"). The cases present difficult, mixed questions of law and fact: when is a minor's chronic medical condition—in this case, insulin-dependent diabetes—more than the parents can manage, and if so, what level of State intervention is appropriate?

In Case No. 3D18-988, the Father appeals the adjudication that the Child is dependent as to him. He also contends that the trial court reversibly erred in permitting counsel for a non-party hospital to be present during the closed proceedings. The GAL Program cross-appeals the denial of the petition for TPR as to the Father.

In Case No. 3D18-984, the Mother appeals the adjudication of dependency as to her, as well as certain case plan directives within the Final Judgment. The GAL Program cross-appeals the denial of TPR as to the Mother. And in Case No. 3D18-839, the Father petitions this Court for a writ of certiorari to review and quash a non-final order entered at the same time as the Final Judgment, requiring

2

the Father to submit to a psychological evaluation, to include a determination "if the parents suffer from any mental health disorders (including Munchausen by Proxy) which may have contributed to the issues which caused the case to come into care."[1]

For the reasons which follow, we affirm the trial court's adjudications of dependency as to each parent and the denial of the petition for TPR as to each parent. We conclude that the trial court was required to sustain the objections of the parents to exclude the non-party hospital's attorney from the courtroom as the trial was conducted (though we find no reversible error attendant to this ruling). We grant the Father's petition for certiorari to a limited extent, quashing that portion of the order for psychological evaluation of the parents requiring a specific assessment for Munchausen syndrome by proxy.

I.      Facts and Procedural History

At the age of 7, in 2014, the Child was diagnosed with insulin-dependent diabetes. In May 2015, the Child was hospitalized with hypoglycemia, a dangerously low blood sugar level characteristic of diabetes. Hypoglycemia can, in an extreme case, culminate in a diabetic coma or even death.

---

[1] The online medical site "Medline" defines this disorder as: "Munchausen syndrome by proxy is a mental illness and a form of child abuse. The caretaker of a child, most often a mother, either makes up fake symptoms or causes real symptoms to make it look like the child is sick." See https://medlineplus.gov/ency/article/001555.htm (site last visited October 22, 2018).

In April 2016, the Child was sheltered following another hospitalization and reports of abuse, abandonment, or neglect on the part of her parents. The parents were allowed supervised visitation at the hospital, and about two weeks later the Child was allowed by DCF to reside with her maternal aunt. The Child's aunt was allowed to supervise visitation by the parents.

In July 2016, DCF filed a petition for TPR as to both parents, alleging that the parents engaged in egregious conduct threatening the life, safety, or physical health of the Child.[2] The Child had additional hospitalizations for diabetic hypoglycemia in March and April of 2017. The Child's treating endocrinologist contacted DCF to report that the parents were not administering insulin properly.

When the petition for TPR came to trial, an attorney from non-party Nicklaus Children's Hospital was in the courtroom. A physician and other witnesses were subpoenaed for testimony at trial. The parents objected to the presence of the attorney. Counsel for DCF acknowledged that the proceedings were closed, but advised that it had no objection to the presence of the hospital's attorney. The trial court overruled the objection.

After hearing seven days of testimony, the trial court prepared a proposed judgment and conducted a further hearing to allow the parties and their attorneys to review and comment on the proposed judgment. The parents objected to the

---

[2] § 39.806(1)(f), Fla. Stat. (2016).

provision relating to a mandatory mental health evaluation for "Munchausen by proxy," and the court agreed on the record that "There was, as I recall, not a single mention of Munchausen by Proxy in the trial, nor any specific allegation of it."

The medical testimony included, however, opinions by the Child's treating physician and doctors who observed the parents during the Child's March 2016 hospital stay, that the Parents may have administered insulin to the Child against the direct medical advice of the physicians.

## II.    Analysis

Our standard of review in the consolidated appeals is de novo with respect to the application of the controlling dependency statutes.  D.R. v. J.R., 203 So. 3d 952, 954 (Fla. 5th DCA 2016).  As to factual determinations by the trial court, our review is for competent substantial evidence supporting the findings.  T.P. v. Dep't of Children & Family Servs., 935 So. 2d 621, 624 (Fla. 3d DCA 2006).

In the case of the related petition for certiorari, we must determine whether the challenged ruling is a departure from the essential requirements of the law, resulting in a material injury for the remainder of the case, such that the injury cannot be corrected in a post-judgment appeal.  M.M. v. Florida Dep't of Children & Families, 189 So. 3d 134 (Fla. 2016).

### A.    Denial of the Petition for TPR

The trial court in this case engaged in conscientious and painstaking deliberations regarding the nature of, and intentions behind, the parents' problems with the management of their Child's diabetes. The court ultimately found that "the State failed to prove by clear and convincing evidence that the Parents engaged in egregious conduct and therefore, a termination of parental rights would not be the least restrictive means of protecting the Child from future harm."

While the trial court concluded that there was sufficient evidence for an adjudication of dependency under section 39.811(1)(a), Florida Statutes (2018),[3] it also found that the Parents' problems in following medical instructions regarding the administration of insulin were not shown to be intentional and "were likely due to miscommunication with the Child's physicians" resulting in faulty management of the Child's diabetes.

The trial court credited "persuasive testimony from witnesses that the Parents kept meticulous medication logs; continually and timely brought the Child in for medical treatment and assistance; brought the Child to school and communicated regularly with the school and school nurse, and even slept with the Child so they could monitor her health continually through the night." The trial court balanced the Parents' demonstrated care for the Child with their problems in

---

[3] The trial court concluded that the Parents failed to follow the medical direction of the Child's treating physicians at the hospital, and that the Parents did not properly manage the Child's insulin intake.

understanding and applying the medical directives for the management of type I diabetes, a chronic and potentially life-threatening medical condition if not kept under tight control.

As pertinent here, section 39.01(47), Florida Statutes (2018), defines "medical neglect" as:

> the failure to provide or the failure to allow needed care as recommended by a health care practitioner for a[n] . . . illness [or] medical condition . . . . Medical neglect does not occur if . . . the immediate health condition giving rise to the allegation of neglect is a known and expected complication of the child's diagnosis or treatment and:
>
> . . .
>
> (b) The parent or legal guardian received conflicting medical recommendations for treatment from multiple practitioners and did not follow all recommendations.

The trial court observed that it had to "consider the possibility that this is a case of a lack of clear communication with the medical professionals perhaps due to a language barrier or a case of some other complex mental health issue that was left unexplored by the Department of Children and Families." We conclude that the trial court relied on competent, substantial evidence in declining to find "egregious conduct" on the part of the parents. Such conduct is one of the fourteen enumerated grounds for TPR, paragraphs 39.806(1)(a) through (m), Florida Statutes (2018).

"Egregious conduct," paragraph (f) of section 39.806(1), includes conduct

7

that "threatens the life, safety, or physical, mental, or emotional health of the child . . . ." The term is further defined in subparagraph 39.806(1)(f)2 to mean "abuse, abandonment, neglect, or any other conduct that is deplorable, flagrant, or outrageous by a normal standard of conduct. Egregious conduct may include an act or omission that occurred only once but was of such intensity, magnitude, or severity as to endanger the life of the child."

The GAL Program argues on cross-appeal that the physicians' testimony established that the Child experienced "repeated incidents of severe, life-threatening hypoglycemia (low blood sugar)." Although there is evidence in the record in support of the GAL Program's contention, there is also competent, substantial evidence supporting the trial court's finding that "the Child's condition has drastically improved and stabilized since she has been using an insulin pump."

The trial court also found a failure by DCF and the GAL Program to prove by clear and convincing evidence that TPR would be the "least restrictive means of protecting the Child from future harm." The court concluded that "grounds for dependency have been established by a preponderance of the evidence," such that the Child should remain in the care of the maternal aunt[4] while the parents are placed in a case plan for rehabilitation and reunification with the Child.[5]

---

[4] DCF and the GAL Program acknowledge that the Child was not hospitalized for further hypoglycemic episodes while under the care of the maternal aunt.

[5] § 39.811(1)(a), Fla. Stat. (2018).

We find no reversible error in the trial court's careful assessment of the evidence and law relating to the Child's medical condition and future treatment plan, in the court's adjudication of dependency, or in the denial of the petition for TPR.

### B.     Hospital Counsel's Attendance at Trial

Section 39.809(4), Florida Statutes (2018), includes this clear directive: "All hearings involving termination of parental rights are confidential and closed to the public." As the trial began, the parents objected to the presence of an attorney for the doctors, hospital, and nurses who were to testify. DCF acknowledged that the proceedings were closed, but told the trial court DCF had no objections to counsel's presence. The trial court overruled the parents' objection.

In Natural Parents of J.B. v. Florida Department of Children & Family Services, 780 So. 2d 6, 11 (Fla. 2001), the Florida Supreme Court upheld the constitutionality of the special closure provision applicable to TPR proceedings. In the present case, the trial court erred in overruling the parents' objection to the presence of the independent attorney for the medical witnesses.

Applying any existing standard of harmfulness or harmlessness to the error in the light of the record in this case, however, we are unable to discern any degree of harm that would necessitate a new trial or otherwise alter our review of the trial court's findings and adjudication.

9

C.    The Father's Consolidated Petition for Certiorari

We have approved, without comment, the trial court's inclusion of a directive that the case plan for the parents must include "mental health evaluation by a qualified professional who will be able to assess conditions the Parents may have that led to child's lack of proper medical treatment." We have done so because the trial court, DCF, and the GAL Program have recognized the harm to the Child that could follow if they are unable, after additional training with the infusion pump and further education regarding insulin and hypoglycemia, to understand their daughter's disease and the dangers of hypoglycemia.

The Father's petition for certiorari in consolidated Case No. 3D18-839, however, addresses a specific element of the mental health examination directed by the trial court. The trial court included a requirement that the mental health professional evaluate "the possibility of the condition of Munchausen Syndrome by Proxy." No medical professional suggested such a diagnosis or possibility at trial, and the trial court conceded on the record that there was "not a single mention of Munchausen by Proxy in the trial, nor any specific allegation of it."

This specific mental health assessment requirement lacks "good cause shown" and notice. J.B. v. M.M., 92 So. 3d 888, 889 (Fla. 4th DCA 2012). The directive, in isolation, meets the standards we have enumerated for certiorari relief in M.M., above, or this Court's decision in J.G. v. Department of Children &

10

Families, 220 So. 3d 555, 556 n.1 (Fla. 3d DCA 2017).  We quash the specific provision of the trial court's order requiring the mental health examination of the parents to include "the possibility of the condition of Munchausen Syndrome by Proxy" (though the examining mental health professional's discretion and professional judgment are not precluded from reaching such a diagnosis, to the extent the professional's evaluation is based on other facts and occurrences related in the trial court's order and this opinion).

III.     Conclusion

We affirm the adjudication of dependency and the denial of the petition for TPR as to both parents.  We grant the consolidated petition for certiorari and quash the specific requirement within the Final Judgment and related order that the mental health evaluation of the parents address "the possibility of the condition of Munchausen Syndrome by Proxy."  The case is remanded to the circuit court for the implementation of the case plan and other provisions detailed in the Final Judgment and related order.

11